# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| NATHANIEL GOODNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:06-1154 |
| v. ) | Judge Nixon / Knowles |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket Entry No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket Entry No. 18. Plaintiff has filed a Reply. Docket Entry No. 19.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff protectively filed his application for DIB on April 25, 2003, alleging that he had

1

been disabled since December 6, 2002, due to back problems and high blood pressure.[1] Docket Entry No. 9,[2] Attachment ("TR"), TR 54-58, 74. Plaintiff's application was denied both initially (TR 33-34, 35-37) and upon reconsideration (TR 31-32, 41-42). Plaintiff subsequently requested (TR 43) and received (TR 23, 45-46) a hearing. Plaintiff's hearing was conducted on December 19, 2005, by Administrative Law Judge ("ALJ") Robert Haynes. TR 350-381. Plaintiff and Vocational Expert ("VE") Kenneth Anchor appeared and testified. *Id.*

On March 13, 2006, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 16-22. Specifically, the ALJ made the following findings of fact:

1. The insured status requirements of the Act were met as of the alleged onset date, and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's degenerative disc disease, rotator cuff tear in left shoulder, and high blood pressure are considered "severe" base on the requirements in the Regulations 20 CFR §§ 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

---

[1] Apparently after Plaintiff filed his initial application, he suffered a rotator cuff tear in his left shoulder. TR 17. His left shoulder rotator cuff was surgically repaired, but he then developed a right rotator cuff tear. *Id.*

[2] Plaintiff has submitted a second, identical, copy of the Record. Docket Entry No. 10.

6. Prior to April 15, 2004, the claimant retained the residual functional capacity for medium work (i.e. occasional lifting/carrying 50 pounds, frequently lifting/carrying 25 pounds, sitting/standing/walking 6 hours in an 8-hour workday, and allows all postural activities on a frequent basis).

7. For the period prior to April 15, 2004, the claimant's past relevant work as a truck driver, cashier, and store manager did not require the peroformance [*sic*] of work-related activities precluded by his residual functional capacity. CFR §§ 404.1565.

8. Beginning April 15, 2004, the claimant retains the residual functional capacity for a range of sedentary work. Specifically, he can lift and/or carry 10 pounds occasionally and 5 pounds frequently. In addition, he would be limited to no climbing; occasionally balancing, stooping, crouching, and kneeling; and limited at reaching, pushing/pulling, and heights. Further, he is limited from no outstretched or above shoulder use.

9. Beginning April 15, 2004, the claimant's past relevant work as a cashier at the sedentary level of work is not precluded by the residual functional capacity.

10. The claimant is an "individual closely approaching retirement age." The claimant has "a limited education." (20 CFR § 404.1564).

11. The claimant has transferable skills as described in the body of the decision (20 CFR § 404.1568).

12. Beginning April 15, 2004, the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.03 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work are [*sic*] cited above.

13. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(g)).

3

TR 21-22.

Plaintiff timely filed a request for review of the hearing decision. TR 11. On October 12, 2006, the Appeals Council issued a letter declining to review the case (TR 5-7), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The ALJ has thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."

4

*Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy

5

in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

---

[3]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that, 1) he suffers from several severe impairments that the ALJ did not recognize; 2) the ALJ erred in finding that there were 8,600 positions as a sedentary cashier that Plaintiff could perform in Tennessee; 3) the ALJ failed to consider the vocational impact of Plaintiff's need to lie down during the day; 4) the ALJ failed to consider the vocational impact of Plaintiff's pain; 5) the ALJ failed to consider or address the evidence submitted by Plaintiff's counsel post-hearing but prior to the ALJ's decision; and 6) the Appeals Council erred in not considering medical evidence that was submitted after the hearing. Docket Entry No. 13-1.

7

Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

In response to Plaintiff's claims of error, Defendant maintains that, 1) the Record supports the ALJ's RFC findings; 2) Plaintiff failed to meet his burden of demonstrating an inability to perform his prior work up to April 15, 2004; 3) the VE testimony provided evidence of a substantial number of jobs that Plaintiff could perform as of April 15, 2004; and 4) the ALJ and Appeals Council properly considered the additional evidence. Docket Entry No. 18.

In his Reply, Plaintiff states that the ALJ based his hypothetical question to the VE on the restrictions given by Plaintiff's shoulder surgeon, and that the ALJ acknowledged Plaintiff's back surgery (that took place shortly before the hearing), but he argues that his condition had continued to decline since his hearing. Docket Entry No. 19. Plaintiff contends that he provided

8

a December 2005 MRI and January 2006 clinic notes to the ALJ on January 12, 2006. *Id.* Plaintiff argues that the ALJ failed to discuss either the December 2005 MRI or the January 2006 clinic notes in his decision, and that his alleged failure to do so leads to the assumption that the ALJ "either disregarded this evidence or failed to consider it." *Id.* As support for his assertion that the neither the ALJ nor the Appeals Council properly considered his additional evidence, Plaintiff notes that neither the December 2005 MRI nor the January 2006 clinic notes is found in the Administrative Record,[4] and that all of the evidence in the Record pertains to Plaintiff's condition prior to the date of the ALJ's hearing decision. *Id.*

Plaintiff argues that he suffers from severe impairments that the ALJ did not recognize. Docket Entry No. 13-1. Plaintiff contends that, although the ALJ properly accepted the limitations placed upon Plaintiff by his shoulder surgeon (TR 20), he failed to discuss the opinion of Plaintiff's treating surgeon, who diagnosed Plaintiff with lumbar disc syndrome, degenerative joint disease in multiple sites, hypertension, and hyperlipidemia (TR 329, 332). *Id.* Plaintiff argues that it was error for neither the ALJ nor the Appeals Council to consider his spinal disorders in determining that he was not disabled. *Id.*

Despite Plaintiff's assertions that neither the ALJ nor the Appeals Council considered his spinal disorders in determining that he was not disabled, the ALJ's decision explicitly discusses Plaintiff's back problems. TR 16-22. Specifically, the ALJ notes Plaintiff's reports that: he could not continue working at the golf range because of his back pain; his back surgery; his degenerative disc disease; his lumbar laminectomy that did not improve his bending, lifting, or

---

[4] Because they are not found in the Administrative Record, Plaintiff has attached the December 2005 MRI and the January 2006 clinic notes to his Brief.

back pain; his undergoing physical therapy; his lumbar MRI that showed spondylosis at L4-5 and L5-S1, mild foraminal stenosis at L4-5 with facet arthropathy, and slight anterolisthesis at L5-S1; his back pain with bilateral leg pain; his lumbar strain and "pre-existing spondyloslisthesis Grade 1"; his post physical therapy unimproved back pain; his continued back pain; his cervical spine MRI that indicated mild central focal protrusion at C5-6 with no evidence of stenosis or nerve root impingement and mild narrowing at C4-5; his EMG that suggested probable right S1 radiculopathy but no evidence of peripheral neuropathy; his declining condition (post April 15, 2004) and increasing back pain; his back pain radiating into his buttocks, thighs, and legs; his numbness in his thighs, legs, and feet; his lumbar laminectomy and diskectomy at L4-5 and L5-S1 with posterolateral fusion[5]; and his post-surgical continued back pain. TR 17-20. The ALJ ultimately found that Plaintiff had "'severe' lumbar disc disease with mild spondylosis at L4-5 and L5-S1,[6] mild stenosis at L4-5." TR 19.

As can be seen, the ALJ clearly considered Plaintiff's back problems. The Appeals Council reviewed the Record and the ALJ's decision, which included the above-cited evidence pertaining to Plaintiff's back problems. Accordingly, Plaintiff's argument lacks merit.

Plaintiff also argues that the ALJ erred in finding that there were 8,600 positions as a sedentary cashier that Plaintiff could perform in Tennessee. Docket Entry No. 13-1. Plaintiff contends that the VE, upon cross-examination, acknowledged that "many" of these positions

---

[5]This is one of the specific records that Plaintiff argues the ALJ did not consider. Contrary to Plaintiff's assertion, however, the ALJ specifically discussed Plaintiff's procedure and Plaintiff's post-surgical continued back pain. TR 20.

[6]This finding mirrors the diagnosis of Dr. Bacon, which Plaintiff avers was not considered. TR 19, 332.

10

would require outstretched arms and reaching, which Plaintiff claims he is unable to do. *Id.*
Plaintiff contends that, because the VE did not specify the number of available sedentary cashier positions that did not require outstretched arms and reaching, "it must be assumed that this number is less than 2,500, and is not a significant number." *Id.*

The VE, however, plainly testified that the 8,600 sedentary cashier positions *did not* have "reaching or pushing and pulling requirements." *See* TR 377. The exchange between Plaintiff's counsel and the VE was, in pertinent part, as follows:

> ATTY: The sedentary cashiering jobs you identified, do – what's the reaching or pushing and pulling requirements of those jobs?
> VE: No pushing and pulling and it's not really considered a reaching position. The individual does need good use of upper extremities but the handling of money, change, tickets or whatever are close at hand.
> ATTY: Okay. And I was looking at Dr. Limbird's assessment where he says no outstretched or above shoulder use. Do – the jobs you've identified they don't require stretching out your upper extremities?
> VE: No, not the sedentary cashier job, no.
> ATTY: Okay. And how many of those are there in middle Tennessee?
> VE: We're looking at sedentary cashier jobs for the State of Tennessee. Let's start with that. It would be in excess of 8,600. Now you wanted a limitation to the middle region. Roughly 35 percent of that amount so that would be roughly a third, 2,500 or so.

TR 377.

Plaintiff misstates the VE's testimony, and his argument is meritless.

Plaintiff further contends that the ALJ and the Appeals Council failed to consider the vocational impact of his need to lie down "three or four times a day for a couple of hours" during

11

the day.  Docket Entry No. 13-1.  Plaintiff notes that the VE testified that Plaintiff's need to lie down for extended periods of time during the day would render him unable to work.  *Id.*

Despite Plaintiff's assertions to the contrary, the ALJ specifically discussed Plaintiff's reported need to lie down two or three times per day for two to three hours at a time.  TR 17, 19.  The ALJ found, however, that Plaintiff's allegations of disabling pain and functional restrictions were disproportionate to the objective medical evidence.  *Id.*  The ALJ noted that the Record did not contain objective signs and findings that could reasonably be expected to produce the limitations alleged by Plaintiff.  *Id.*  This determination is within the ALJ's province.  *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

Moreover, the ALJ ultimately found that Plaintiff's allegations of disabling pain and functional restrictions were not fully credible (TR 19, 21).  Because the ALJ did not accept Plaintiff's allegations of disabling pain and functional restrictions, he did not have to accept the VE's testimony as it pertained to them.  *See, e.g, Cline v. Shalala*, 96 F.3d 146, 150 (6th Cir. 1996); *Stanley v. Secretary of HHS*, 39 F.3d 115, 118-119 (6th Cir. 1994); *Blacha v. Secretary of HHS*, 927 F.2d 228, 231 (6th Cir. 1990).  Accordingly, Plaintiff's argument fails.

Plaintiff additionally contends that the ALJ and the Appeals Council failed to consider the vocational impact of Plaintiff's pain.  Docket Entry No. 13-1.  Plaintiff argues that he has pain "all the time," for which he takes Ibuprofen and Celebrex.  *Id.*  Plaintiff notes that the VE testified that pain in the "moderate to moderately severe" range would preclude all work.[7]  *Id.*

---

[7]During Plaintiff's hearing, the ALJ asked the VE what the vocational implications would be if an individual had moderate to moderately severe pain that might affect functioning.  TR 376.  The VE responded that it would "most likely" rule out the type of work he had identified as

12

Plaintiff argues, "it is inconceivable that a 63 year old individual who has had back and shoulder surgery and who suffers from degenerative disc disease, degenerative joint disease, bilateral rotator cuff tears, and arthritis throughout his body would not experience pain at such a level."[8] *Id.*

Contrary to Plaintiff's assertions, the ALJ repeatedly acknowledged Plaintiff's reported pain. *See, e.g.,* TR 17-21. As was discussed above, however, the ALJ ultimately found that Plaintiff's allegations of disabling pain and functional restrictions were disproportionate to the objective medical evidence because the Record did not contain objective signs and findings that could reasonably be expected to produce the limitations alleged by Plaintiff. TR 17, 19. Because the ALJ found Plaintiff's subjective complaints of pain less than fully credible, he was not bound to accept the VE's testimony as it pertained to the vocational implications of Plaintiff's complaints of pain. *See, e.g, Cline*, 96 F.3d at 150; *Stanley*, 39 F.3d at 118-119; *Blacha*, 927 F.2d at 231. Accordingly, this argument fails.

Plaintiff argues that the ALJ and the Appeals Council failed to consider or address evidence submitted post-hearing, but prior to the rendering of the ALJ's decision. Docket Entry No. 13-1. Plaintiff notes that his hearing was conducted on December 19, 2005, and that on January 12, 2006, his counsel submitted a December 2, 2005 lumbar MRI and January 3, 2006

---

available and appropriate for the previous hypothetical claimant. *Id.*

[8]Despite this argument, the Regulations provide in relevant part that, "statements about your pain or other symptoms will not alone establish that you are disabled...." 20 C.F.R. §§ 404.1529, 416.929. Objective medical evidence must support subjective claims. *See Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24).

13

clinic note from orthopedic surgeon, Dr. Weaver.[9]  *Id.*   Plaintiff contends that the above-referenced medical evidence was not mentioned in the ALJ's decision or found in the Administrative Record.  *Id.*  Plaintiff notes that his counsel referenced that medical evidence in his March 29, 2006 letter to the Appeals Council, but argues that the Appeals Council failed to inquire about these records or mention them in its October 12, 2006 decision (TR 5-8).  *Id.*

Plaintiff's December 2, 2005 MRI revealed a first degree spondylolisthesis at the L5-S1 level with mild anterior displacement of the L5 vertebral body in relation to S1, associated bilateral facet arthrosis at the L5-S1 level with a suggestion of mild narrowing of the neural foramina at the L5-S1 level, and mild central posterior disc bulging at the L4-5 and L5-S1 levels, but no significant disc space narrowing, no abnormal bone signal, no significant central spinal stenosis, and intact nerve roots.  Docket Entry No. 13-1, p. 11.

Dr. Weaver's January 3, 2006 clinic note recounts Plaintiff's subjective complaints, discusses Plaintiff's December 2, 2005 MRI, mentions Plaintiff's improving range of motion bilaterally in his shoulders, his "rather low strength" (particularly in the left arm), his tender C7, and his decreased bilateral sensation in his feet, and it discusses Dr. Weaver's assessment that Plaintiff had lumbar disc disease, foraminal spinal stenosis at L5-S1, and bilateral rotator cuff tears.  Docket Entry No. 13-1, pp. 9-10.  Dr. Weaver's plan was to refer Plaintiff to a neurosurgeon as soon as possible, continue physical therapy for his shoulder to increase the shoulder and neck range of motion, and for him to return to the clinic after seeing the

---

[9]Plaintiff has attached copies of these items to his Supporting Memorandum.  Docket Entry No. 13-1.

14

neurosurgeon for further evaluation.[10]  *Id.*

Remand for consideration of new and material evidence is appropriate only when the claimant shows that: (1) new material evidence is available; *and* (2) there is good cause for the failure to incorporate such evidence into the prior proceeding.  *Willis v. Secretary*, 727 F.2d 551, 554 (6th Cir. 1984).  Plaintiff can show neither.

As an initial matter, Plaintiff cannot establish that the December 2, 2005 MRI and January 3, 2006 clinic note are material.  "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore v. Secretary*, 865 F.2d 709, 711 (6th Cir. 1988) (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)).  Plaintiff has failed to satisfy this burden.

Even if Plaintiff's December 2, 2005 MRI and January 3, 2006 clinic note had been part of the record before the ALJ, "substantial evidence" supports the ALJ's findings and inferences.  The ALJ's decision demonstrates that he carefully considered the testimony of both Plaintiff and the VE, observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision.  The information contained in this MRI and clinic note are essentially duplicative of the information contained in the Record.  There is no "reasonable probability that the Secretary would have reached a different disposition of the disability claim" if this MRI or clinic record had been part of the Record before the ALJ.

Moreover, Plaintiff has not established "good cause" for failing to submit the results of

---

[10]There is no indication in the additional materials submitted by Plaintiff as to whether he followed up with a neurosurgeon as advised.

15

his December 2, 2005 MRI to the ALJ during the hearing. Plaintiff's hearing was conducted on December 19, 2005, a full two and a half weeks after Plaintiff's MRI was conducted. Plaintiff has not explained why he could not obtain a copy of his MRI results during that two and a half week period and present that information to the ALJ at his hearing.

Plaintiff has failed to demonstrate either that the new medical evidence was material or that there was good cause for his failure to present the new evidence at the administrative hearing. Accordingly, remand pursuant to Sentence Six of 42 U.S.C. § 405(g) is not warranted.

Finally, Plaintiff maintains that the Appeals Council failed to consider the "new and material medical evidence" he submitted after the hearing. Docket Entry No. 13-1. Specifically, Plaintiff avers that, on September 6, 2006, he submitted: 1) May 25, 2006 radiographic evidence indicating abnormalities in the lumbar spine (TR 342); 2) a May 25, 2006 EMG that demonstrated "severe mainly axonal polyneuropahy" with "some chronic denervation with reinervation in L4 distribution" (TR 343); 3) May 30, 2006 radiographic evidence of osteopenia and mild degenerative changes at the AC joint in the right shoulder (TR 344); 4) May 30, 2006 radiographic evidence of post-surgical changes and degenerative changes at the AC joint in the left shoulder (TR 345); and 5) July 25, 2006 radiographic findings confirming bilateral osteoarthritis in Plaintiff's knees (TR 346) (collectively "Plaintiff's submissions"), but that the Appeals Council never considered or addressed this evidence. *Id.*

The regulations provide that where new and material evidence is submitted with the request for review, the entire record will be evaluated and review granted where the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence. 20 C.F.R. § 416.1470. The Appeals Council accepted Plaintiff's submissions and

incorporated them into the Record. TR 8. After reviewing Plaintiff's submissions and the Record as a whole, the Appeals Council determined that there was no basis under the regulations for granting Plaintiff's review. TR 5-7. Specifically, the Appeals Council stated:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of the Appeals Council.
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

TR 5-6. The "additional evidence listed on the . . . Order of the Appeals Council" plainly included "Records from the Nashville General Hospital dated May 25, 2006 to July 25, 2006," and an "Attorney letter dated September 6, 2006."

Plaintiff argues that the above-quoted language was merely boilerplate and that the Appeals Council, in fact, failed to consider Plaintiff's submissions. Docket Entry Nos. 13-1, 19. Plaintiff provides no evidence to support that assertion, nor does Plaintiff cite any authority for the proposition that the Court can find that the Appeals Council failed to consider Records that the Appeals Council explicitly reported that it considered. Accordingly, Plaintiff's contention that the Appeals Council failed to consider his post-hearing submissions is baseless.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have ten (10)

days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within ten (10) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　E. CLIFTON KNOWLES
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

18